# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS,<br><br>   *Plaintiff*,<br><br>v.<br><br>WESTGATE GROUP, LLC,<br><br>   *Defendant*. | Case No. _____<br><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Melanie Davis, by and through the undersigned counsel, brings this action against Westgate Group, LLC, a Nebraska limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers in the multi-tenant commercial building known as "Westgate Plaza", even though such removal is readily achievable.

2. The violations alleged in this complaint occurred at "Westgate Plaza", located at 3401 South 84 Street, Omaha NE 68124.

3. Defendant's failure to provide equal access to "Westgate Plaza" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4.      Defendant's conduct constitutes an ongoing and continuous violation of the law.

5.      Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

6.      Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

7.      Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8.      Plaintiff Melanie Davis is a resident of Omaha, Nebraska. Plaintiff Davis grew up in Omaha, Nebraska and lived there until she moved to Minnesota in 2005. While living in Minnesota, she visited Omaha many times, including five visits in 2016-2017. She recently moved back to Omaha, where she now resides.

9.      Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk and

stand, and is therefore a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

10.     Defendant Westgate Group, LLC, a Nebraska limited liability company, is the owner and lessor of the real property and improvements which are the subject of this action, the multi-tenant commercial building known as "Westgate Plaza", a place of public accommodation within the meaning of the ADA, located at the street address of 3401 South 84 Street, Omaha NE 68124.

## FACTUAL BACKGROUND

11.     On October 1, 2017, Plaintiff Davis attempted to patronize the multi-tenant commercial building known as "Westgate Plaza" in Omaha, Nebraska. Plaintiff was traveling with her boyfriend, who also uses a wheelchair for mobility.

12.     When Plaintiff and her boyfriend drove to "Westgate Plaza" she found approximately 313 total parking spaces in the customer parking lot and 12 parking spaces reserved for persons with disabilities.  Plaintiff shops at tenant businesses of "Westgate Plaza," including Mangelson's.

13.     Plaintiff found that 11 parking spaces were reserved for persons with disabilities through posted signage, while 1 parking space was reserved only through paint on the surface of the parking space.

14.     Additionally, 8 reserved parking spaces lacked an adjacent access aisle, and 1 parking space had an adjacent access aisle that was triangular.

15.     Plaintiff also found that the curb ramp in front of "Tom Kelley's Bowling Pro Shop" is blocked by a parking space. A vehicle parked in this parking space would obstruct the curb ramp, making it unusable.

16.     No reserved parking spaces were reserved as van parking space spaces.

17.     Plaintiff found 0 accessible parking spaces on the north side of the building.

18.     Because of the lack of nearby curb ramps, some parking spaces were not located on the shortest accessible route to a tenant business entrance.

19.     Photographs in Exhibit A to this Complaint depict the reserved parking spaces in the "Westgate Plaza" customer parking lot as they appeared on Plaintiff's October 1, 2017 visit.

20.     In light of the architectural barriers at "Westgate Plaza", Plaintiff is deterred from visiting "Westgate Plaza" in the future. Plaintiff intends to return to "Westgate Plaza" to patronize the facility, but these architectural barriers deter her from doing so. She plans to return and patronize "Westgate Plaza" when she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

21.     Plaintiff Davis attempted to access Defendant's premises, but could not do so independently on a full and equal basis because of her disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff Davis cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

### THE ADA AND ITS IMPLEMENTING REGULATIONS

22.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

     a.  Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

     b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

     c.  Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

     d.  Individuals with disabilities continually encounter various forms of discrimination; and

     e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

23.  Congress explicitly stated that the purpose of the ADA was to:

     a.  Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

     b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

     c.  Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address

the major areas of discrimination faced day-to-day by individuals with disa-

bilities.

42 U.S.C. § 12101(b)(1), (2), (4).

24.     Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

25.     The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

26.     Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

27.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

28.     In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

29.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

30.     On September 30, 2004, the DOJ issued an advance notice of proposed rule-making to begin the process of adopting the 2004 ADAAG revisions.

31.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

32.     The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

33.     Defendant has discriminated against Plaintiff on the basis of her disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Westgate Plaza". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Westgate Plaza" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a.  "Westgate Plaza" had approximately 313 total parking spaces and had 12 reserved parking spaces, but had only 3 accessible parking spaces that complied with ADAAG 502 rather than the required 8, in violation of ADAAG

208.2. Plaintiff uses a wheelchair for mobility and requires an accessible parking space to make a safe transfer between her vehicle and wheelchair and travel between the parking lot and building entrance.

b.  1 of the reserved parking spaces in the "Westgate Plaza" customer parking lot lacked posted signage, in violation of ADAAG 216.5 and 502.6. Failure to mark reserved parking spaces with posted signage creates the risk of some-one inadvertently parking in the reserved space and hampers the ability of law enforcement from enforcing parking rules and regulations.

c.  8 of the reserved parking spaces lacked an adjacent access aisle, in violation of ADAAG 502.2. Plaintiff uses a wheelchair for mobility and requires an adjacent access aisle to make a safe transfer between her vehicle and wheel-chair in the parking lot.

d.  The curb ramp leading to the "Tom Kelley's Bowling Pro Shop" entrance was blocked by a parking space, in violation of ADAAG 206.2.1 and 502.7. A vehicle parked in this parking space would prevent Plaintiff from being able to use the curb ramp and gain access to the sidewalk adjacent to the building.

e.  Accessible parking spaces were not dispersed throughout "Westgate Plaza", including the north side of the building, in violation of ADAAG 208.3.1. Plaintiff would have to travel a considerable distance between a reserved parking space and some tenant businesses.

f.  Some accessible parking spaces were not located on the shortest accessible route to a tenant business entrance, in violation of ADAAG 208.3.1. Shorter routes are easier and safer for Plaintiff to travel.

- 8 -

34. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Westgate Plaza". To qualify as an accessible parking structure, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502.

35. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Westgate Plaza" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

36. Compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

37. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See*

ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

38.     As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

39.     Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Westgate Plaza" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of her rights under the ADA.

## FIRST CAUSE OF ACTION
### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

40.     Plaintiff incorporates and realleges the above paragraphs.

41.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

43.     Defendant has discriminated against Plaintiff and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated

thereunder, including the ADAAG, as described above. Plaintiff Davis has been denied full and equal access to "Westgate Plaza" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

44.   Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

45.   Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Davis, even though removing the barriers is readily achievable.

46.   Plaintiff Davis plans to visit "Westgate Plaza" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm upon her planned return visit to "Westgate Plaza" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

47.   This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to make "Westgate Plaza" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Westgate Plaza" until such time as Defendant cures the access barriers.

48.   Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

a.   Plaintiff demands a trial in Omaha, Nebraska.

b. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

c. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

d. That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

e. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED:  <u>November 6, 2017</u>

<div style="margin-left: 40%;">

<u>/s/ Padraigin L. Browne</u>
Padraigin L. Browne (MN Bar # 389962)
8530 Eagle Point Blvd Suite #100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805

</div>